602 P.2d 47

M. H. JENKINS, Claimant-Appellant,

v.

AGRI–LINES CORPORATION, Employer,

and

Department of Employment, Defendants-Respondents.

No. 12404.

Supreme Court of Idaho.

Sept. 26, 1979.

Rehearing Denied Nov. 20, 1979.

Ernesto G. Sanchez, Idaho Legal Aid Services, Inc., Caldwell, for claimant-appellant.

Michael Greene, of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for Agri-Lines Corp.

R. LaVar Marsh, Deputy Atty. Gen., and Roger B. Madsen, Asst. Atty. Gen., State of Idaho, for defendant-respondent Department of Employment.

McFADDEN, Justice.

This appeal has previously been argued before this court and an opinion issued. Petition for rehearing was filed by respondents Agri-Lines Corporation and the Department of Employment. The petition for rehearing was granted and the original opinion is withdrawn and this opinion substituted therefor.

Claimant-appellant M. H. Jenkins was employed by Agri-Lines Corporation (hereinafter Agri-Lines) until May 6, 1976, when he was discharged for misconduct. Claimant filed a claim for unemployment benefits, which claim was denied. He pursued his appeals through the Department of Employment, and in each instance the denial of his claim was upheld. He then appealed to the Industrial Commission which, after hearing further evidence submitted by claimant and by supervisory personnel of Agri-Lines, affirmed the denial of his claim. Jenkins then appealed to this court, and we affirm the order of the Industrial Commission affirming the denial of his claim.

In summary, the Industrial Commission found that on May 5, 1976, the day before claimant was discharged, he did not report for work because of an emergency at his home requiring him to repair a broken water line which supplied water for his domestic and livestock use. The repairs were completed during the morning of May 5, but Jenkins did not report for work at any time during the whole day.

Jenkins had requested his nephew, who was also employed by Agri-Lines, to notify his foreman that Jenkins would not be at work. Previously, Jenkins had used his nephew to inform his supervisors of his absence without incident. Jenkins did not telephone his employer to tell of his absence, nor did his wife attempt to notify his employer.

Nothing was said by the nephew to the assistant foreman (the foreman apparently not being at work) until after a 10 o'clock coffee break when the assistant foreman asked about claimant. The nephew advised the assistant foreman "He'll [Jenkins] be in later." Nothing further was said. Supervisory personnel decided to terminate Jenkins' employment that morning, but did not notify him of his discharge until about midday of May 6.

Based on its findings of fact the Commission concluded that Jenkins' absence from work constituted misconduct within the meaning of I.C. § 72–1366(e), and concluded that claimant had not properly notified the

company of his absence. The Industrial Commission then ordered that the claim be denied and affirmed the decision of the appeals examiner.

The principal issue presented by this appeal is whether the record sustains the findings of fact, and if so, whether there was "misconduct" within the meaning of I.C. § 72–1366(e), which at the pertinent time provided:

> Personal eligibility conditions.—The personal eligibility conditions of a benefit claimant are that—
>
> (a) . . .
>
> .     .     .     .     .
>
> (e) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment.

■ This court's review in unemployment cases on appeal from the Industrial Commission is limited to reviewing questions of law. Idaho Const., Art. 5, § 9; I.C. § 72–732. The first question of law presented is whether the findings of fact made by the Industrial Commission are supported by substantial and competent evidence. It is well settled that findings of the Industrial Commission in this type of case will not be disturbed on appeal when they are supported by substantial and competent evidence. *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978); *Simmons v. Department of Employment*, 99 Idaho 290, 581 P.2d 336 (1978); *Hutchinson v. J. R. Simplot Co.*, 98 Idaho 346, 563 P.2d 404 (1977).

■ The Industrial Commission found that although Jenkins requested his nephew to notify Jenkins' supervisor of his intended absence, and that this method of notification would have been acceptable, nevertheless the notification received was insufficient to properly advise the employer of Jenkins' intended absence. It is not clear whether the Industrial Commission found that the notification was insufficient because it was received late or because its content was defective. However, from a

review of this record it is clear that, in either case, there is substantial and competent although conflicting, evidence supporting the finding of fact. Thus, it is the conclusion of the court that Jenkins did not properly notify his employer of his absence as required.

■ The next issue for consideration is whether, in the context of the facts of this case, the improper notification of Jenkins' intended absence from work constituted such "misconduct" within the meaning of I.C. § 72–1366(e) so as to make him ineligible for unemployment compensation.

In *Duran v. Employment Security Agency*, 75 Idaho 94, 267 P.2d 628 (1954), a case where an employee had been discharged for irregularity in punching a time clock, leaving his place of employment during working hours, failing to previously arrange for absences or leaves, and failing to contact his employer during his absence, the court held that the record supported a finding that the claimant either was discharged for misconduct or quit voluntarily, and hence was not entitled to unemployment benefits. There this court stated, at 75 Idaho 97, 267 P.2d 630:

> "Where an employee temporarily leaves his employment, and assuming that his absence is for good cause, it is his duty to advise his employer of the reason, seek a leave of absence, and keep the employer informed of his intentions and prospects of his returning. Though circumstances may vary these duties, good faith on the part of the employee must always appear. It is the duty of the employee to have regard for the interests of his employer and for his own job security, and to act as a reasonably prudent person would in keeping contact with his employer and in securing the permanence of his employment. .  .  . "

In *Johns v. S. H. Kress & Co.*, 78 Idaho 544, 307 P.2d 217 (1957), claimant was discharged for refusing to work on Monday, December 26, which the Governor had declared a legal holiday. Previously the store manager had advised all store employees that they would be required to work on that

552

day. The court held this to constitute "misconduct."

*Watts v. Employment Security Agency,* 80 Idaho 529, 335 P.2d 533 (1959), involved a log scaler who left his job without giving or attempting to give his employer any notice. He was discharged and upon filing for unemployment benefits, the claim was denied. This court affirmed the Industrial Accident Board, stating:

> "The evidence is such that a trier of the facts would be justified in concluding that appellant's actions here involved were inconsistent with that type of conduct which his employer has a right to expect and therefore is sufficient to support a finding that his conduct was in deliberate disregard of his employer's interests as found by the appeals examiner and affirmed by the Industrial Accident Board."

80 Idaho at 534, 335 P.2d at 536.

*Alder v. Mountain States Telephone & Telegraph Co.,* 92 Idaho 506, 446 P.2d 628 (1968), was a case where telephone operators at a local exchange engaged in a practice of omitting to make toll tickets when a party placing a long distance call happened to be another operator, contrary to company regulations. Claimants, who had engaged in this practice, admitted their participation and were dismissed. Their claims for unemployment benefits were denied. On appeal to this court it was held that the operators had disregarded the company's interests in participating in such a practice contrary to company rules.

Other cases which have dealt with "misconduct" are *Oliver v. Creamer Heating & Appliance,* 91 Idaho 312, 420 P.2d 795 (1966), involving an employee's failure to remain on twenty-four hour call; *O'Neal v. Employment Security Agency,* 89 Idaho 313, 404 P.2d 600 (1965), involving an employee's off-duty moral turpitude; *Custom Meat Packing Co. v. Martin,* 85 Idaho 374, 379 P.2d 664 (1963), involving an employee talking back to the employer and general sloppiness in work habits; *Rasmussen v. Gem State Packing Co.,* 83 Idaho 198, 360 P.2d 90 (1961), involving an employee throwing material into a scrap barrel whose contents were to be put into a shredder not intended for disposal of metal. *Cf. Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 556 P.2d 859 (1976), involving a lack of deliberate violation of the spirit of an employer's rule.

The common thread which runs through all these cases has been well expressed in *Johns v. S. H. Kress & Co., supra,* where this court stated:

> "While the term 'discharged for misconduct' as used in Sec. 75–1366(f), I.C. has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees."

78 Idaho at 548, 307 P.2d at 219.

It is the conclusion of the court that this record reflects a standard of conduct by the employee bringing it within the definition of "discharged for misconduct" as outlined in *Johns v. S. H. Kress & Co., supra.*

While much has been made of the fact that the decision to terminate Jenkins' employment was made in the morning of May 5, 1975, and prior to the time he failed to report for work on that afternoon, it is the conclusion of the court that this fact becomes irrelevant when the ultimate dismissal was made the following day. Mere intention to discharge is meaningless until such time as that information and decision has been communicated to the employee.

The Court has considered the other issues presented by appellant Jenkins, but finds them to be without merit. It is thus the conclusion of the court that the order of the Industrial Commission denying claimant unemployment benefits is affirmed.

SHEPARD and BAKES, JJ., concur.

DONALDSON, C. J., concurs in part, and concurs in Part II of dissent by BISTLINE, J.

BISTLINE, Justice, dissenting.

I.

It is difficult for me to distinguish the Court's new opinion from the previous opinion now withdrawn—with which I and one other member of the Court concurred. Both opinions contain language declaring the limitations of Idaho Constitution Art. 5, § 9 and I.C. § 72–732, and both place reliance on *Johns v. S. H. Kress & Co.*, 78 Idaho 544, 307 P.2d 217 (1957) for interpretation of the word "misconduct" found in I.C. § 72–1366(e). The earlier opinion of the Court pointed out, correctly, that misconduct was defined in *Johns v. S. H. Kress & Co.* as "willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." 78 Idaho at 548, 307 P.2d at 219.

The earlier, and now withdrawn, opinion cited our recent case of *Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900, 556 P.2d 859 (1976) as being a case "where this Court addressed the issue of when an employee's violation of his employer's rules would constitute misconduct," and in reversing the Commission's decision denying the benefits of the Act, quoted from *Wroble*:

"Here, if misconduct there was, it came from the claimant's nonconformance with the letter of the rule enunciated by the employer. Here, there appears to be no *deliberate violation* of the rule." (Emphasis added)

*Wroble v. Bonners Ferry Ranger Station*, 97 Idaho at 902, 556 P.2d at 861.

*Wroble*, a unanimous decision of this Court, again set forth this Court's definition of disqualifying misconduct that was first found in *Johns* and perpetuated thereafter in *Oliver v. Creamer Heating & Appliance*, 91 Idaho 312, 317, 420 P.2d 795, 800 (1966) and a sequence of other cases set forth on page 902 of 97 Idaho, 556 P.2d 859.

Having "Cf."d *Wroble* in today's opinion, the Court restates the *Johns* definition of disqualifying misconduct, and holds that Jenkins falls into that definition.

Jenkins may have been negligent in entrusting the message to his nephew, assuming that he knew of any propensity toward inattentiveness on the part of the nephew. The nephew may have been negligent, but if so, it is improper to penalize Jenkins, whose conduct is at stake. Applying the rule in *Johns*, wherein the Court took it upon itself to define "misconduct," the Commission in the first place should have allowed Jenkins' claim, and where it did not, we should in turn reverse.

Given the facts found by the Industrial Commission, the record simply does not show that appellant intentionally or deliberately violated his employer's rule requiring notification of an absence as far in advance as possible. Appellant's notification was at best negligent, but not a deliberate violation of the spirit of his employer's rule. A negligent attempt to notify one's employer of an intended absence is not an intentional, deliberate violation of the employer's rules. No deliberate violation of the employer's rule having occurred prior to his discharge, appellant is not guilty of misconduct within the meaning of I.C. § 72–1366(e).

II.

However, although case law applicable to this controversy requires that Jenkins be awarded unemployment benefits, because it is apparent that the opinion released today can only bring new bewilderment, I have suggested that the Court reexamine the stand taken in *Johns v. S. H. Kress & Co.* in light of our Idaho Constitution, Art. 5, § 9, and I.C. § 72–732; and while it has not done so, and perhaps properly, where neither party has raised the validity of *Johns v. S. H. Kress & Co.* as an issue, it is proper that some forewarning be uttered in that regard.

The pertinent statute of the Employment Security Law here involved is not ambiguous, but inconsistent decisions of this Court surely have made it so. Certainly the turnabout in this case will be cause for additional concern.

The statute in question, I.C. § 72–1366(e), does not disqualify from the benefits of the Employment Security Law all employees who are discharged. Rather it makes ineligible the employee who "was discharged for misconduct in connection with his employment." The Court in *Johns v. S. H. Kress & Co., supra,* for the first time appears to have expanded upon I.C. § 72–1366(e) by therein defining that statutory language. Since then it has been accepted with the force of law that there can be "misconduct" which, though it be in connection with the employment and may serve to justify the employer's discharge of an employee, will not suffice to disqualify the employee from gaining the benefits which the law provides, with the ultimate decision not always being that of the Commission, but of the Court where an appeal has been taken from the Commission.

In *Booth v. City of Burley,* 99 Idaho 229, 580 P.2d 75 (1978), this Court re-examined its standard of review in those cases where witnesses do not testify live before the Commission in light of the constitutional provision; similarly, we should again consider here the standard of appellate court review where the determination is a mixed question of law and fact.

One text states that, even where there is not our constitutional directive, "As a general rule, mixed questions of law and fact stand on the same footing as pure questions of fact and are not subject to review by an appellate court." 5A C.J.S. *Appeal and Error* § 1642 (1958) at 229–230. It is an ever-present problem to recognize that which is a mixed question. In the particular type of case under discussion, however, it is not difficult to ascertain that we deal with a mixed question. The fact-finder has the responsibility and function to find from the evidence presented what evidentiary facts exist in regard to the claimant's discharge and whether those facts amount to misconduct; and from there to determine whether the misconduct is in connection with the claimant's employment. Such are mixed questions of law and fact.[1]

As earlier mentioned, the Court itself in *Johns v. S. H. Kress & Co.* expanded the scope and standard of review in unemployment benefit cases. The simple issue in that case was "[w]hether refusing to work on a legal holiday constitutes misconduct on the part of the employee." 78 Idaho at 547, 307 P.2d at 218. A strong two-member dissent would have sustained the Commission determination that where the hiring contract did not expressly require services on a legal holiday, refusal of an employee to work was not misconduct in connection with the employment. The dissent was impressed with the benevolent aspects of the Employment Security Act; the majority's concern was in essence that public monies not be paid to a person refusing to work. "Upholding such a claim as is here made would not serve the purpose for which the Fund is created." *Johns v. S. H. Kress & Co.,* 78 Idaho at 548, 307 P.2d at 219. The majority, in the process of advocating its philosophy, and absent any such issue being raised before the Commission or in the Court, conveniently interpreted the term "discharged for misconduct," and thereupon carried the day by finding the conduct of claimant Johns within the very rule it expostulated in that case, saying that that claimant's excuse for not working "was in effect a positive, arbitrary refusal to comply with the terms of the contract of employment." *Id.*

In view of the inconsistencies of the decisions of this Court, and the ensuing problems thereby visited upon the Commission, claimants and employers, the holding of *Johns v. S. H. Kress & Co.* should be recon-

---

1. Similarly, where a jury is the finder of fact on a murder charge, it must determine from the evidence whether a defendant killed a person (a fact) and under instructions of law determine further whether such homicide fits into the legislatively established classification of homicide which is excusable or justifiable, or is voluntary manslaughter, involuntary manslaughter, or murder in the first or second degree—certainly a question of fact and law. Many other such mixed questions of fact and law are readily identifiable.

sidered.[2] The Court-supplied definition was merely borrowed from the dictionary definition of the word, all of which tends to explain why the legislature had not felt called upon to define a word which had a well-recognized meaning.

It was for the Commission in *Johns v. S. H. Kress & Co.* to determine the facts of that discharge, to determine whether that claimant's acts or omissions constituted misconduct, and to determine whether that misconduct was in connection with the employment. Having ascertained the facts, it was then the function of the Commission to interweave those facts with the law, and declare the eligibility or non-eligibility of the claimant. The final determination was a mixed question of law and fact. If competent and substantial evidence sustained the decision of the Commission on mixed questions of law and fact, this Court should not have interfered any more than it should have interfered on questions involving fact alone. Only when there is presented a pure question of law may the Court upset a Commission decision. If *Johns v. S. H. Kress & Co.* and its progeny overstep the constitutional limitation, it should be overruled as was *Mandes v. Employment Security Agency*, 74 Idaho 23, 255 P.2d 1049 (1953). Only in this manner can the Court continue to bring some stability into this field. So long as *Johns v. S. H. Kress & Co.* stands it is the law in Idaho that this Court reserves unto itself the right to make the ultimate determination of whether a claimant's misconduct was or was not disqualifyingly deliberate.

DONALDSON, C. J., concurs in Part II.

---

2. Short months ago this Court took a second look at a related case preceding *Johns*, namely *Mandes v. Employment Security Agency*, 74 Idaho 23, 255 P.2d 1049 (1953), and it (and other cases) were specifically overruled insofar as the same theretofore stood for the proposition that Commission findings were not binding on appeal "when the Commission does not hear and see witnesses." *Booth v. City of Burley*, *supra*, 99 Idaho at 232, 580 P.2d at 78.