480 P.2d 912

Wayne HAMMOND dba Hammond Transfer
& the Hammond Company, Plain-
tiff-Respondent,

v.

DEPARTMENT OF EMPLOYMENT,
Defendant-Appellant.

No. 10519.

Supreme Court of Idaho.

Feb. 10, 1971.

R. Lavar Marsh, Boise, for appellant.

Daniel W. O'Connell, of Ware, Stellmon & O'Connell, Lewiston, for appellee.

SPEAR, Justice.

This is an appeal from a decision of the Industrial Accident Board holding that the services performed by Richard Coulter and Leo Frei were not performed as employees, but as "independent businessmen," and thus, that no contributions need be made on their behalf.

As a company agent for Allied Van Lines in the Lewiston-Moscow area in Idaho, Hammond Transfer owns or rents trailers which it leases to Allied for the transportation of household goods. Hammond provides maintenance and insurance for his trailers and also the license or permits required by various states through which household goods are transported. Hammond also owns some truck tractors which his employees drive in pulling the trailers, and some of the trailers are pulled by drivers who are not permanent employees of Hammond, but who own their own truck tractors and pull trailers on a commission basis.

Prior to 1968 Richard Coulter and Leo Frei were employed by Hammond Transfer to drive Hammond trucks on trips within a 500-mile radius of Lewiston, Idaho. Under this employment arrangement the two drivers were paid either a monthly salary or paid by the hour, taxes were withheld from their wages, payments were made on their behalf to the Idaho Employment Security

Agency, and all expenses connected with the transportation of goods hauled by them were paid by Hammond.

During 1968, Coulter and Frei each purchased their own truck tractor and became "long haul" operators, transporting household goods from one point in the United States to another. Though both men make their homes in the Lewiston-Moscow area and get home when they can, less than ten per cent of the shipments they handle originate or terminate in this area. The truck tractors were purchased independently of Hammond and the latter is in no way responsible for payments on the balance of the purchase contracts. The two drivers are responsible for all maintenance and repair on their vehicles, maintain their own insurance policies thereon, and may use the vehicles for their own personal use.

All orders as to where a load is to be picked up and delivered come from Allied rather than from Hammond. Hammond may request through Allied that a driver pick up a particular load but the driver may reject such request, and is under no contractual obligation to accept any load. Though Allied does the actual scheduling, the drivers are free to pick the route they wish in getting from the point of origin to their destination. The drivers arrange their own time off, are not compelled to work any specified hours or days, and can generally take time off whenever they wish to do so. They are responsible for the loading and unloading of the trailers which is not controlled or supervised by Hammond in any way. They purchase their own packing materials, hire assistants to aid them in loading or unloading the trailers, and pay for all expenses associated with such activities.

Hammond has an Idaho PUC permit but no ICC permit. All shipments handled by Coulter and Frei are under the authority of Allied's ICC and Idaho PUC permits. Both drivers are subject to ICC rules and regulations regarding maximum driving hours, trip reports, and equipment safety checks. Both are licensed by Allied and must meet physical and other requirements established by Allied and the ICC. Transportation rates are set by Allied subject to ICC approval and the drivers are paid on a per-shipment basis. Allied sends the money to Hammond who pays over to the drivers their share and retains an amount as rental for the use of his vans. The driver receives 52% of the total charge made to the customer for loading, transportation and unloading. If the customer requests additional services, the driver retains 100% of the charge therefor. Each driver is totally responsible for damage to cargo while in his control and claims are deducted from payments due them.

No federal or state income tax is withheld from payments to Coulter and Frei nor are deductions made for social security and similar items. They receive no vacation or bonus as do employees of Hammond, nor do they have access to Hammond warehouse facilities as do Hammond employees. They do not complete Hammond Company employee forms and both do their own bookkeeping. They pay for their own expenses on their hauls, and copies of their records, including itemization of expenses, are not required nor received by Hammond.

Coulter and Frei both attended a school operated by Allied to train them in the skills of moving and driving, and both are licensed by Allied. They apparently have no contract with Allied, however, and haul only on Hammond trailers through Hammond's agency agreement with Allied. Should they leave Allied, their services and equipment could be employed by another moving company. Both Coulter and Frei consider themselves self-employed and do not wish to be included under employment security coverage.

Based upon these facts, the Department of Employment of the State of Idaho made a determination that Coulter and Frei were employees of Hammond and that services performed by them were in "covered employment" under the Idaho Employment Security Law, thus requiring Hammond to

make contributions to the employment security fund for them. Upon appeal by Hammond, the Appeals Examiner affirmed the Department's decision. Hammond then appealed to the Industrial Accident Board which heard the case de novo and reversed the Examiner's decision, holding that the services performed by the two drivers did not fall within the "covered employment" classification. From that decision, the Department of Employment has appealed to this court.

A single question is raised by this appeal: Whether the Industrial Accident Board was correct in finding that Coulter and Frei were not employees of Hammond, and that Hammond was therefore not liable for contributions to the employment security fund.

Under the Employment Security Law, anyone who has persons performing services for him must make payments to the Employment Security Fund if the services fall within the definition of "covered employment." I.C. § 72–1316 defines "covered employment" in pertinent part as follows:

> "(d) Services performed by an individual for remuneration shall, for the purposes of the Employment Security Law, be covered employment unless it is shown: (1) that the worker is free from control or direction in the performance of his work under his contract of services, and (2) that the worker is engaged in an independently established trade, occupation, profession, or business."

The record fully shows that Coulter and Frei were free from control or direction in the performance of their work. Appellant contends, however, that the record fails to show that the two drivers were "engaged in an independently established trade, occupation, profession, or business."

█ In the case of Swayne v. Department of Employment, 93 Idaho 101, 456 P. 2d 268 (1969), this court set down three factors to be considered in determining whether a worker is or is not engaged in

an independent business. These factors are:

(1) Did the worker have authority to hire subordinates?

(2) Did the worker own major items of equipment?

(3) Would either party be liable to the other for a peremptory termination of the business relationship?

█ In this case, in addition to being entirely free from any control whatsoever in the performance of their work, Coulter and Frei had the authority to hire subordinates to help them load and unload their trailers and exercised this authority frequently. They also owned the major item of equipment used in their hauling—the tractor, and were completely responsible for all expenses on the tractor including insurance, repairs and maintenance. These factors indicated that the drivers were engaged in an independent business and this indication is further strengthened by the fact that the expenses on their equipment constituted a part of their total overhead expense for which they were not reimbursed by Hammond.

Regarding the third factor, whether either party would be liable to the other for a peremptory termination of the business relationship, the record is of no assistance. In the letter of determination by the Department of Employment, the Department asserted that no liability would result from a premature cessation of the business relationship, but such statement was an opinion of the Department only, unsupported by any reliable evidence or sworn testimony. With the exception of that single statement upon which we may not rely, the record is completely silent as to whether or not liability would result in the situation described. Although we recognize that the existence of liability upon a premature cessation of the relationship is one of the strongest indications that a worker is an independent businessman, we have never held that the fulfillment of this third factor, or of any one factor, was a prerequisite to a finding that the worker is engaged in

an independent business. See National Trailer Convoy, Inc. v. Employment Sec. Agency of Idaho, 83 Idaho 247, 360 P.2d 994 (1961) and Beutler v. MacGregor Triangle Company, 85 Idaho 415, 380 P.2d 1 (1963); Swayne v. Department of Employment, supra.

Additionally, under the facts of this case this test becomes less meaningful. Rather than a single contract for hauling between the parties, the arrangement here seems to be a series of trip-by-trip contracts with the drivers doing little more than renting trailers from Hammond. Should the relationship be terminated between trips, no liability would result because no new contract was as yet entered into by the parties. Since the evidence taken in its entirety fully supports the Board's determination that Coulter and Frei were engaged in an independently established business, such decision may not be disturbed by this court. Oliver v. Potlatch Forests, 73 Idaho 45, 245 P.2d 775 (1952); Woodall v. Idaho Potato Processors, Inc., 91 Idaho 626, 428 P.2d 943 (1967); In Re South, 91 Idaho 786, 430 P.2d 677 (1967).

The decision of the Industrial Accident Board is affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.