535 P.2d 672

**Richard Q. TOTUSEK, dba H & R Block,
Plaintiff-Appellant,**

v.

**DEPARTMENT OF EMPLOYMENT of the
State of Idaho, Defendant-Respondent.**

No. 11449.

Supreme Court of Idaho.

April 25, 1975.

Rehearing Denied June 10, 1975.

Stanley D. Crow, Boise, for plaintiff-appellant.

W. Anthony Park, Atty. Gen., R. LaVar Marsh, Raymond N. Malouf, Asst. Attys. Gen., Boise, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from a determination of the State Industrial Commission that appellant Richard Totusek was an employer, that certain of his subordinates were performing "covered employment" under the Employment Security Law, that moneys paid to those persons for services were "wages," and that Totusek was liable for unemployment insurance contributions.

H & R Block Company operates income tax preparation businesses in many states. Appellant Totusek has a franchise agreement with H & R Block which authorizes him to operate income tax preparation offices in northern Idaho. Totusek has an office in Coeur d'Alene, Idaho and another in Lewiston, Idaho. Totusek in turn has contracted with one Nella Troy for the management and operation of the Coeur d'Alene office, and with one Betty Spickard for the management and operation of the Lewiston office. Those management agreements are identical.

On June 16, 1972 the respondent Department issued to Totusek a determination letter holding that moneys paid by him to Troy and Spickard in connection with the operation of the Coeur d'Alene and Lewiston offices were "wages" (I.C. § 72–1328) paid in "covered employment" (I.C. § 72–1316) under the Employment Security Law (I.C. § 72–1301 et seq.). Totusek was required to pay unemployment insurance contributions upon those wages, together with penalties for late reporting. As to the other employees in the office, since Troy and Spickard had paid contributions upon those wages, those contributions were credited to Totusek.

Upon appeal from the determination to the Appeals Examiner of the Department, it was held that Troy and Spickard were not "employees" of Totusek, and the earlier determination was reversed. The Department successfully appealed that decision to the State Industrial Commission, which found that Totusek had retained the right to direct and control Troy and Spickard, that Troy and Spickard were not engaged in an independently established occupation, that Troy and Spickard were performing "covered employment," and that Totusek was liable for unemployment insurance contributions upon the moneys paid Troy and Spickard. This appeal results, and we affirm the determination of the State Industrial Commission.

■ The policy underlying Idaho's Employment Security Law is to encourage stable employment, to provide compensation to persons during their periods of unemployment and thus to alleviate the burdens brought about by unemployment. I.C. § 72–1302; Toland v. Schneider, 94 Idaho 556, 494 P.2d 154 (1972). Generally, unemployment benefits are paid from a fund accumulated during times of employment (I.C. § 72–1302), and contributions to this fund are paid by employers based on wages paid by them for covered employment (I.C. § 72–1349). A "covered employer" is a person who pays for services in "covered employment" above certain minimum levels (I.C. § 72–1315). I.C. § 72–1316(a) generally defines "covered employment," but the case at bar raises questions regarding I.C. § 72–1316(d). This subsection was amended during the period of time relevant to this case. Idaho Session Laws, Chapter 13, 1970. Although since 1970 internal renumbering of subsection (d) has taken place, no change in context has been effected.

Prior to 1970, I.C. § 72–1316(d) provided in pertinent part:

"(d) Services performed by an individual for remuneration shall . . . be

covered employment unless it is shown: (1) that the worker is free from control or direction in the performance of his work under his contract of service, and (2) that the worker is engaged in an independently established trade, occupation, profession, or business." Idaho Sess. Laws, Chap. 214, 1965.

That statute was amended effective February 10, 1970 to provide:

"(d) Services performed by an individual for remuneration shall . . . be covered employment unless it is shown: (1) that the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact, and (2) that the worker is engaged in an independently established trade, occupation, profession, or business." Idaho Sess. Laws, Chap. 13, 1970.

The pre-1970 version of the statute in question was interpreted in Swayne v. Department of Employment, 93 Idaho 101, 456 P.2d 268 (1969). There the court rejected the argument (of the Department) that an employer's *right* to control a worker was sufficient to establish covered employment under the then existing law. The court said "The * * provision of I.C. § 72–1316(d)(1) does not utilize the common law term which was defined as including the *right* of control as well as actual control. The present version speaks only in terms of *actual* control."

We are required to decide if the amendment of the statute in 1970 sufficiently changed the legislative meaning of the Law as to require a holding herein as to the post-1970 liability different from that which obtained in *Swayne*. Does the statute, post-1970, now establish that an employer's "right" to control the worker is sufficient to give rise to "covered employment"? Put another way, does the post-1970 statute require an employer to show that the worker is free from the "right" to control the performance of the work in order to take that employer outside the ambit of the Employment Security Law?

When a statute is amended, it is presumed that the legislature intended a change in the meaning or application of the statute. Swayne v. Department of Employment *supra*. Totusek argued that *Swayne* is still controlling, albeit the statute has been amended since *Swayne*, and that we should construe the amended statute as continuing to mean "actual" control by the employer. Such argument is not persuasive when viewed in light of the language added to the statute: "has been and *will continue to be* free from control or direction in the performance of his work" (emphasis added) and "both under his contract of service and in fact." The words "in fact" cover the actual control situation as set forth in *Swayne* and the term "under his contract of service" logically contemplates the circumstance in which the contract of service confers upon the employer the right to exercise control even though the right may not be asserted or exercised.

We note that in 1947 I.C.A. § 43–2311(i) provided in pertinent part:

"Services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this Act, unless and until it is shown . . . that such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of hire and in fact."

That language is similar to the post-1970 statute. In Continental Oil Co. v. Unemployment Comp. Division of the Industrial Accident Board, 68 Idaho 194, 192 P.2d 599 (1947), the court construed that statute and rejected the employer's claim of nonliability for unemployment excise taxes. The court therein stated:

"The fact remains . . . the contract is drawn so as to give the Company the control, or the right to control, its representatives in every substantial particular in or about the conduct of the business . . .. Moreover, . . . if a representative fails to comply with any one of the terms of the [agree-

ment], to be by him done or performed, the Company is given the right, *without notice*, to immediately terminate the agreement—which amounts to giving the Company the right . . . to at once discharge the representative." 68 Idaho at 203–204, 192 P.2d at 604.

Appellant contends decisions from other states with similar legislation support his argument, but the cited cases are manifestly inapposite.

We hold that the Department and the Industrial Commission properly interpreted the post-1970 statute in question and correctly issued their determination upon the basis that freedom from the right to control must be demonstrated by the employer.

■■■ Totusek argues that the Industrial Commission erred in holding that under the contracts between Totusek and Troy and Spickard, Totusek had the right to control them in the performance of their work. We hold that there is substantial evidence supporting the finding of the Commission of Totusek's contractual right to control the performance of the work of Troy and Spickard. Those contracts gave Totusek the power to promulgate policies and procedures for the conduct of the business, violation of which constituted cause for termination. The accounts of the offices were kept in accordance with Totusek's instructions, and Totusek retained the right to inspect the account books at any time. Receipts and expenditures were controlled by Totusek. The findings of the Industrial Commission will not be disturbed as to factual matters if they are supported by substantial competent evidence. Toland v. Schneider, 94 Idaho 556, 494 P.2d 154 (1972).

The above discussion is dispositive of the liability sought to be imposed on Totusek for that period of time following the 1970 amendment of the statute, but not for the period prior to the 1970 amendment of the statute. We note that the Commission made no findings on the question of *actual* control, and therefore the question of right to control versus actual control is not suf-

ficient to dispose of the question of liability for the period prior to 1970. However, the Commission found that Troy and Spickard were not "engaged in an independently established trade, occupation, profession, or business * * *" I.C. § 72–1316(2) [now I.C. § 72–1316(d)(1)(B)]. If that finding of not being engaged in an independently established trade, etc. is supported by substantial evidence, the services of Troy and Spickard constitute "covered employment."

As to whether one is engaged in an independently established trade, etc., the court in Swayne v. Department of Employment, 93 Idaho 101, 456 P.2d 268 (1969) set forth three factors or tests:

1. Did the worker have authority to hire subordinates?

2. Did the worker own major items of equipment?

3. Would either party be liable to the other for peremptory termination of the business relationship?

*See also* Hammond v. Department of Employment, 94 Idaho 66, 480 P.2d 912 (1971), holding that no one of those tests is conclusive.

In the case at bar the supplies, equipment, fixtures and files of the business were and remained the property of Totusek as did any tangible personal property acquired with funds of the businesses. Totusek's power to control business expenditures, including expenditures for employees, severely limits Troy and Spickard's ultimate power to hire subordinates. Totusek owned the H & R Block franchise rights in the respective areas, and Troy and Spickard were restricted from engaging in the same business in the same area for a period of five years after the termination of their contract agreements. The finding of the Commission that Troy and Spickard were not engaged in an independently established business is supported by substantial evidence.

We have examined appellant's contention that an interchange of correspondence between Troy and Spickard and the Depart-

ment in the years in question for some reason bars the Department from seeking to impose the liability sought herein.

■ This correspondence, essentially a series of documents entitled "Notice of Contribution Rate," simply does not constitute a binding determination that Totusek was not a "covered employer." These documents give notice of a rate of contribution, pursuant to I.C. § 72–1351; they do not determine whether one is a "covered employer," pursuant to I.C. § 72–1353. Notification of a rate of contribution alone does not constitute a conclusive determination of the "covered" status of an employer. We would further note that any contributions paid pursuant to these notices were credited to Totusek upon the Department's determination that he was a covered employer. Accordingly, this contention is without merit, as are appellant's remaining arguments. The decision of the Industrial Commission is affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, DONALDSON, and BAKES, JJ, concur.