600 P.2d 783

**DEPARTMENT OF EMPLOYMENT, Plaintiff-Respondent,**

v.

**BROWN BROTHERS CONSTRUCTION, INC., Defendant-Appellant.**

No. 12967.

Supreme Court of Idaho.

Sept. 25, 1979.

---

Michael T. Spink of Walker & Spink, P.A., Twin Falls, for defendant-appellant.

David H. Leroy, Atty. Gen., R. LaVar Marsh, Donald L. Harris, Deputy Attys. Gen., Boise, for plaintiff-respondent.

DUNLAP, Justice Pro Tem.

This is an appeal from an order of the Industrial Commission declaring that tree fallers are employees of appellant and therefore covered under the provisions of the Employment Security Law for the purpose of assessing unemployment insurance compensation taxes. We reverse.

The facts in this case are not in dispute. Appellant Brown Brothers Construction Company has been engaged in the logging business since 1961. For the past several years it has been supplying logs to the Wendell Mill in Fairfield, Idaho. Wendell Mill purchased standing timber from the United States Forest Service and then contracted with appellant to cut, skid, and haul the timber to the mill.

As a part of its logging operations appellant engages the services of fallers, or sawyers, to do the actual tree cutting. It is the status of these fallers, whether as independent contractors or as employees, that is in contention here.

The fallers are compensated at an agreed to rate per thousand board feet of timber cut. They furnish their own saws, files, gasoline, equipment, and transportation to and from the cutting site. Appellant designates the "unit" or area in which the fallers are to cut, but each man is free to come and go as he pleases and to set his own work days and hours. Appellant's president testified that he did not supervise the faller's work because he was always busy at a location some distance from the cutting sites. But he did testify that he had the right to order a faller to go back to the site

and re-cut high stumps or perform other tasks to complete the work in a satisfactory manner. At times the fallers would personally hire other individuals to trim the trees prior to cutting. These individuals were always hired and paid directly by the faller without objection or comment from appellant.

Appellant carried all the fallers on the payroll books as independent contractors, except for two men who approached appellant and requested they be treated as employees so that they could obtain company group insurance. Appellant testified that these two were treated differently purely as a convenience to the individuals and that the duties were identical in all respects to those of the other fallers.

After an audit of appellant's payroll books, the Department of Employment determined that the tree fallers were not exempted from the unemployment insurance tax provisions of I.C. § 72–1316(d). This determination was submitted to the appeals examiner, who, after a hearing, concluded that the fallers were employees, and not independent contractors. Brown Brothers appealed this decision to the State Industrial Commission and the matter was heard before Referee Youngstrom. New evidence was submitted to supplement the record of proceedings before the appeals examiner. The referee entered findings of fact and conclusions of law and recommended that the order of the appeals examiner be affirmed. The Industrial Commission adopted the referee's findings of fact and conclusions of law and affirmed the appeals examiner's decision.

The sole issue on appeal is whether the Industrial Commission erred in ruling that the fallers were employees of appellant so as to require appellant to contribute unemployment compensation taxes on their behalf.

I.C. § 72–1316(d) provides that

"(d) Services performed by an individual for remuneration shall, for the purposes of the employment security law, be covered employment:

(1) Unless it is shown:

(A) That the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact, and

(B) That the worker is engaged in an independently established trade, occupation, profession, or business . . . ."

Regarding condition (A), the freedom from control, this court said in *Department of Employment v. Bake Young Realty,* 98 Idaho 182, 184, 560 P.2d 504, 506 (1977):

"The general test of whether the right to control is sufficient to give rise to the relationship of employer and employee is whether or not the control extends to ' . . . the details of the work, the manner, method, or mode of doing it, the means by which it is to be accomplished, or, specifically, the details, manner, means or method of doing the work, as contrasted with the result thereof.' *Merrill v. Duffy Reed Construction Co.,* 82 Idaho 410, 415, 353 P.2d 657, 660 (1960); *Moore v. Idaho Employment Security Agency,* 84 Idaho 1, 367 P.2d 291 (1961); *Beutler v. MacGregor Triangle Co.,* 85 Idaho 415, 380 P.2d 1 (1963)."

Here it is undisputed that appellant exercised no control whatever as to the details, manner, means or method of doing the work. Each man was completely free to do the job as he saw fit, to set his own hours and days, and to hire subordinates to assist him. The only right that appellant could exercise was the right to order a faller to return to a site to complete the job satisfactorily. Such a right relates only to the result of a faller's labor, not to the control of it. Condition (A) was therefore complied with.

■ As to condition (B), that the worker be engaged in an independent trade or business, the following factors are to be considered: (1) whether the worker had authority to hire subordinates; (2) whether the worker owned major items of equipment; and (3) whether either party would be liable to the other for a peremptory

termination of the business relationship. *Hammond v. Department of Employment,* 94 Idaho 66, 480 P.2d 912 (1971); *Swayne v. Department of Employment,* 93 Idaho 101, 456 P.2d 268 (1969).

The record clearly reveals that the first two questions must be answered in the affirmative. The fallers could and did hire subordinates without any approval from appellant. And they owned their own trucks, chain saws, files, gasoline, and other equipment.

Regarding the third factor, whether any party would be liable to the other for a peremptory termination of the business relationship, Referee Youngstrom found that either party could terminate without liability.

The record does not support such a finding. The only testimony relating to liability for termination of the contract was given by Mr. Brown:

"Q. Have you terminated fallers before the project has been cut out?

"A. No.

"Q. Could you?

"A. I guess I could but fallers are not that easy to get.

.    .    .    .    .

"Q. Well, is there any obligation on either party for termination services before the entire project is cut out? If you assign him an area, and he gets part way through and walks off the job, what happens?

"A. He walks off the job.

"Q. Is there any mention of obligation on either party when you're contracting with a faller, is there any mention of if he leaves during the middle of the job [sic], or something, what might happen to him . . . some . . .

"A. Not that I know of."

This testimony at most indicates that at the time of contracting the parties had no express agreement regarding liability for breaching the contract. It does not support the finding of non-liability in the event the relationship is terminated prior to completion of a given project. Indeed, Mr. Brown testified that the situation had never even arisen. We therefore must disregard the finding, and we are left in the same position as the court was in *Hammond v. Department of Employment, supra,* where the court said:

"With the exception of that single statement upon which we may not rely, the record is completely silent as to whether or not liability would result in the situation described. Although we recognize that the existence of liability upon a premature cessation of the relationship is one of the strongest indications that a worker is an independent businessman, we have never held that the fulfillment of this third factor, or of any one factor, was a prerequisite to a finding that the worker is engaged in an independent business. See *National Trailer Convoy, Inc. v. Employment Sec. Agency of Idaho,* 83 Idaho 247, 360 P.2d 994 (1961) and *Beutler v. MacGregor Triangle Company,* 85 Idaho 415, 380 P.2d 1 (1963); *Swayne v. Department of Employment, supra.*" 94 Idaho at 68, 480 P.2d at 914.

■ Nor are the three tests of *Swayne* the only applicable criteria for determining the parties' relationship. *Department of Employment v. Bake Young Realty, supra.* The method of payment is a factor to be considered. *National Trailer Convoy, Inc. v. Employment Security Agency,* 83 Idaho 247, 360 P.2d 994 (1961). Here it is undisputed that payment was based upon the total amount of timber actually cut by each faller, not upon the hours of work performed. "Payment for a result or by the job is an indicia that the relationship is one of contractee and independent contractor." *Id.* at 253, 360 P.2d at 998 (quoting 56 C.J.S. *Master and Servant,* § 3(8)). And in *Moore v. Idaho Employment Security Agency,* 84 Idaho 1, 6, 367 P.2d 291, 294 (1961), the court noted "a strong indication of the relationship of principal and independent contractor" in the fact that "AMFI did not direct the hours of work nor the period of the day such work was carried on." Such is the fact here. See also *Ledesma v. Bergeson,* 99 Idaho 555, 585 P.2d 965 (1978).

Based on the foregoing considerations, we hold that the Industrial Commission erred in determining that fallers are covered employees of appellant under I.C. § 72–1316(d). The order is reversed. Costs to appellant.

SHEPARD, McFADDEN and BAKES, JJ., and ROWETT, J. Pro Tem., concur.

BAKES, Justice, concurring specially:

I concur in the decision of the Court that there was no evidence to sustain the commission's finding that these loggers were employees rather than independent contractors. However, I think the record does support the finding of the referee that either party could have terminated the arrangement without liability. My disagreement is with the law which has apparently built up over the years, as reflected in *Hammond v. Department of Employment,* 94 Idaho 66, 480 P.2d 912 (1971), relied upon by the majority. That rule is perhaps best expressed in the case of *Beutler v. MacGregor Triangle Co.,* 85 Idaho 415, 380 P.2d 1 (1963), wherein the Court stated:

> "The retained right of discharge of the worker, or the right of either party to terminate the relationship without liability to the other party, is construed to be strong,—perhaps the strongest and most cogent,—indication of retention of the power to control and direct the activities of the worker, and thus to control detail as to the manner and method of performance of the work. This Court in effect has so held in certain of its decisions hereinafter discussed." 85 Idaho at 422, 380 P.2d at 4.

In my view the inference expressed in that rule is not correct. There is no question but what a party can contract to be an employee for a definite term, with liability imposed for a unilateral termination. Likewise, it is clear that parties can enter into an agreement to create an independent contractual arrangement which is terminable at will by either party. There is no fixed rule stating that an employment relationship is terminable at will, but an independent contractual relationship cannot be terminated unilaterally without a breach of contract. In either case, it depends upon the agreement of the parties and they can agree one way or the other. If that be true, then it is apparent that the rule set out above is not a rule of law in any sense of the word, but is merely a comment by this Court that in its statistical opinion most employment contracts are terminable at will, but most independent contractual relationships are not. I doubt this Court has the wisdom or experience to make that sort of observation.

In my view the third element set out in the majority opinion, *i. e.,* "whether either party would be liable to the other for a peremptory termination of the business relationship" is a fact question dependent entirely upon the agreement between the parties and proves nothing about whether or not the contract creates an employer-employee relationship or an independent contractor-contractee relationship. I disagree with the majority's conclusion that the record does not support the referee's finding that either party could have terminated this relationship without liability. However, in my view that finding is totally irrelevant in deciding whether or not it is an employer-employee relationship or an independent contractual relationship. Regardless of that finding, there is no evidence in the record to sustain the determination that it was an employer-employee relationship, and I agree with the conclusion of the majority that the commission erred in so concluding.